IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

GREGORY LEON HAMMER,   )
   Petitioner,     )  Civil Action No. 7:23-cv-00003
            )
v.           )
            )  By:  Elizabeth K. Dillon
HAROLD W. CLARK,    )    United States District Judge
   Respondent.    )

**MEMORANDUM OPINION**

   Gregory Leon Hammer, proceeding *pro se*, petitions this court for relief pursuant to 28

U.S.C. § 2254.  (Pet. for Writ of Habeas Corpus, Statement of the Case (Memo.), Dkt. No. 1.)

The respondent, Harold W. Clarke, moves to dismiss.  (Dkt. No. 10.)  Also pending are two

motions filed by Hammer pertaining to discovery and judicial notice.  (Dkt. Nos. 35, 42.)  For

the reasons stated below, Hammer's motion for judicial notice will be granted, but his motion to

conduct discovery will be denied.  Further, respondent's motion to dismiss will be granted,

Hammer's § 2254 petition will be denied, and the court will not issue a certificate of

appealability.

I.  BACKGROUND

**A.  State Court Proceedings**

   On January 15, 2020, Hammer was convicted by a jury in the Circuit Court for the City

of Waynesboro of abduction, felony eluding, and driving as a habitual defender.  (Ex. K, Volume

II of Joint Appendix (J.A.) 483–85, Dkt. No. 11-11.)  Hammer elected to represent himself at

trial.  On June 24, 2020, the trial court sentenced Hammer to two years for abduction and five

years, each, for felony eluding and driving as a habitual offender, consecutive, for a total

sentence of twelve years.  (J.A. 579–80.)

Hammer appealed to the Court of Appeals of Virginia.  Appellate counsel filed an *Anders* petition,[1] arguing that the trial court erred by granting the prosecution's motion to *nolle prose* the abduction charge and subsequently permitting the prosecution to withdraw that motion.  Hammer filed a *pro se* supplement, arguing that: (1) the trial court erred in granting the prosecution's motion to *nolle prose* the abduction charge and subsequently permitting the prosecution to withdraw that motion; (2) the trial court erred in permitting the prosecution to use evidence from a "void offense"; (3) the evidence was insufficient; (4) the prosecutor committed misconduct; and (5) the trial court violated his right to self-representation.  On April 30, 2021, a three-judge panel of the court of appeals granted in part and denied in part Hammer's appeal.  (Resp't's Ex. G, Dkt. No. 11-7.)  The court denied Hammer's appeal as to his *pro se* arguments 2, 4, and 5. The court granted the appeal as to the claim raised in the *Anders* petition and *pro se* claims 1 and 3.

On January 18, 2022, the court of appeals affirmed Hammer's convictions in a published opinion.  *Hammer v. Commonwealth*, 867 S.E.2d 505 (Va. Ct. App. 2022).  On February 3, 2022, the court denied a petition for rehearing *en banc*.

Hammer then appealed to the Supreme Court of Virginia.  Appellate counsel represented Hammer as to the appeal of the claims adjudicated by the court of appeals in the published opinion.  Hammer proceeded *pro se* in the appeal of the claims initially denied in the April 30, 2021 opinion.  On September 2, 2022, the Supreme Court of Virginia refused the appeal.  On November 21, 2022, that court denied a petition for rehearing as to the claims adjudicated by the court of appeals in the published opinion.

Hammer has not filed a state habeas petition.

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

### B.  Factual Background

The Virginia Court of Appeals found the following facts in its January 18, 2022 opinion:

> On the evening of November 27, 2018, Officer Brandon Mawyer was patrolling in his police cruiser in the City of Waynesboro when he received a "be on the lookout" alert for a "possibly-abducted female ... named Morgan Hammer."  The alert said that Morgan may have been abducted by Hammer—her husband—and "that they may be en route to their apartment" in Waynesboro.

> Mawyer was familiar with Hammer and his wife.  He had seen Hammer "up close and personal" while working on other matters.  He had examined photographs of Hammer, including pictures of Hammer's tattoos.  Mawyer had also spoken to both spouses during a traffic stop.  Knowing where they lived, Mawyer drove to the Hammers' apartment in Waynesboro, but the lights were off and no one was home.

> Believing that Hammer might be returning home from Rockingham County, Mawyer drove to the Waynesboro city limits on Route 340.  He pulled into a driveway on the side of the road and waited there with his lights off, the rear of his patrol car facing north towards Rockingham County, to minimize the chance of being spotted by someone approaching from that direction.  Although it was nighttime, the road was illuminated by a streetlight not more than five feet from where Mawyer positioned his car.  The road was illuminated even more by a second streetlight a little farther away.  A photograph showing the illuminated road was introduced into evidence as the Commonwealth's Exhibit 2.  With that lighting—and his patrol car facing south, towards Waynesboro—Mawyer had a clear and unobstructed view of the road from his driver's side window.

> Within about a minute, Mawyer spotted a car approaching rapidly from behind.  Mawyer activated his radar and clocked the vehicle doing sixty-three miles an hour in the thirty-five-mile-an-hour zone.  As the vehicle passed him, Mawyer saw Hammer behind the wheel and Morgan in the passenger seat, looking out the window towards him.  Hammer leaned forward—looking around Morgan to see into Mawyer's patrol car—and "actually made eye contact" with Mawyer. Mawyer recognized both immediately.  Mawyer also saw the distinctive tattoo on Hammer's hand as Hammer held the steering wheel.

Mawyer activated his emergency lights and siren and commenced pursuit. Hammer fled, accelerating to speeds over 100 mph, driving the wrong way on a divided highway and forcing an oncoming car off the road to avoid a head-on collision. Because Mawyer had positively identified Hammer, and to reduce the risk of an accident, Mawyer slowed down and turned off his emergency equipment, continuing to follow at a safe distance. After entering Augusta County, Hammer briefly "crash[ed]" and continued to drive erratically, on and off the road. An Augusta sheriff's deputy joined the pursuit.

After running out of gas, Hammer's car came to a stop in Fishersville. Mawyer observed for about ten seconds as Hammer exited his car, ran down the embankment, climbed over a barbed-wire fence, and disappeared into the woods behind. Hammer was wearing a black leather jacket. Because he could not see Morgan, Mawyer rushed to the Hammers' car, finding her alive on the passenger floorboard. Mawyer then ran after Hammer, but by then Hammer had escaped into the woods beyond.

Mawyer returned to check on Morgan. She was "scared," telling Mawyer that she'd been abducted. She also gave a written statement about what had happened.

The next morning, Mawyer received a be-on-the-lookout alert for a car stolen in Fishersville, "fairly close" to where Hammer had fled on foot. Mawyer and another officer drove to the Hammers' apartment, finding the stolen car parked across the street. After obtaining a search warrant, the officers found Hammer inside the apartment. They also found the key to the stolen car and the black leather jacket that Mawyer had seen Hammer wearing when he escaped.

Hammer was indicted by a Waynesboro grand jury on charges of abduction, felony eluding, and driving after being declared a habitual offender. He elected to represent himself at trial, with backup counsel appointed in case Hammer changed his mind.

On the morning of trial, Morgan failed to appear, having been subpoenaed and despite an outstanding capias for a prior failure to appear. Hammer said that he "hope[d]" his wife would "show up," but he predicted that "the victim" would not, no matter how long the case might be continued. When the trial judge said he would not continue the abduction charge, the prosecutor orally moved to *nolle pros* it. The Commonwealth proffered that it had made various efforts to locate Morgan and secure her attendance, without success.

Hammer objected, asking that the court instead dismiss the abduction charge "outright." The trial judge orally granted the Commonwealth's motion, finding that the Commonwealth had made every reasonable effort to secure Morgan's testimony.

But Morgan arrived a few minutes afterwards, thirty-five minutes late to court. With Morgan now present, the Commonwealth asked for leave to withdraw the oral *nolle pros* or to set the abduction charge separately for trial.

The court declined to reschedule trial on the abduction charge and allowed the prosecution instead to withdraw the *nolle pros* request. After the judge asked, "Anything else?[,]" Hammer said nothing. Nor did he object after a brief recess, before the jury was brought in. The court's oral *nolle pros* rulings were never memorialized and are not mentioned in the conviction order.

Officer Mawyer testified at trial to the events recounted above. The prosecution then called Morgan to the stand. But she claimed to have a poor memory and to not recall what had happened. When asked to read the contents of her written statement, given at 3:15 a.m. the morning of the incident, she refused to read it aloud. The prosecutor proffered that Morgan had been "threatened by associates of Mr. Hammer that if she testifies against him today, she will be killed." Morgan was evasive when responding to questions about that, repeating "I don't want to be here." She ultimately denied that her husband had threatened to kill her for testifying and further denied that Hammer had told her what to say. The prosecution called a victim-witness assistant, however, who testified that Morgan admitted, shortly before being called to the stand, that she feared Hammer because he had been "writing letters to people, threatening ... to kill her."

Morgan's original, contemporaneous statement was admitted into evidence as her prior-recorded recollection. Morgan wrote that she had gotten into the car that evening to go with Hammer to the store and that he "kept driving when [she] told him to stop." She told Hammer she "wanted to get out of the car, but he kept speeding and wouldn't let [her] out." Once the police started following them, Hammer told Morgan "to hold on[,] we're going for a ride." She "told him to stop and pull over but he refused." Hammer "kept speeding until we wrecked the car in a ditch and the car ran out of gas." The Commonwealth also introduced multiple letters from Hammer to Morgan, and transcripts of messages that he sent her from jail, telling her what to say at trial to exonerate him.

Hammer did not move to strike the Commonwealth's evidence. In his defense, Hammer called Morgan back to the witness stand. Morgan denied telling the victim-witness assistant that she feared Hammer or that he had threatened her life if she testified. Morgan claimed that her written statement to the police was a lie, though she couldn't explain why she lied. She claimed that "Tamil," whose last name she didn't remember, was the one who had eluded police, not Hammer, and that Tamil had threatened to kill her. Hammer himself also testified, claiming that he was not the person driving the car and that his wife had lied about him to police. On cross-examination, he admitted to having been convicted of "nine or ten" felonies.

The jury found Hammer guilty of all three charges, recommending a prison sentence of two years on the abduction charge, five years for eluding, and five years for driving after being declared a habitual offender. The court denied Hammer's motion to set aside the verdict, adjudicated him guilty, and sentenced him in accordance with the jury's verdict.

*Hammer*, 867 S.E.2d at 508–10.

## C.  Petitioner's Claims

Hammer brings the following claims in this action:

- The prosecutor committed misconduct in restricting Hammer's ability to interview a witness, Guy Venable.  (Pet. at 5; Memo. at 10–16, 21–22.)

- The trial court violated his right of self-representation and due process rights in denying his request to interview Venable prior to trial.  (Pet. at 7; Memo. at 16–22; Addendum to Pet. at 15–20, Dkt. No. 7.)

- There was insufficient evidence supporting his convictions because Officer Mawyer's identification testimony was inherently incredible.  (Pet. at 8; Memo. at 23–26.)

- The trial court lacked the statutory authority to vacate the prior grant of the prosecution's motion to *nolle prosse* the abduction charge.  (Pet. at 10.)

- His waiver of the right to counsel was invalid.  (Addendum to Pet. at 3–14.)

### D.  Federal Court Proceedings

Hammer filed a previous § 2254 action on October 25, 2022.  *Hammer v. Clarke*, Case No. 7:22-cv-00609.  The court dismissed this case on December 7, 2022, because Hammer had not exhausted his state court remedies.  (*Id.* Dkt. No. 5.)

Hammer filed this action on January 3, 2023.  Hammer filed an addendum on February 1, 2023, adding an additional claim.  (Dkt. No. 7.)  Respondent moved to dismiss on February 23.  (Dkt. Nos. 10, 11.)  Hammer responded in four separate filings.  (Dkt. Nos. 19, 21, 27, 28.)  These responses were timely pursuant to the court's *Roseboro* notice (Dkt. No. 14), and an oral order granting an extension was entered (Dkt. No. 23).  Hammer also filed motions for discovery and an evidentiary hearing which the court denied without prejudice on June 1.  (Dkt. No. 34.)  Hammer filed another motion to conduct discovery, which is currently pending before the court.  (Dkt. No. 42.)  Also pending is a motion for the court to take judicial notice of verifiable scientific facts.  (Dkt. No. 35.)

Pursuant to the court's order of service (Dkt. No. 2), respondent filed a notice of pertinent state court records that it filed with the court (Dkt. No. 13).  Hammer subsequently filed notices of state court records that Hammer claims are not before the court and are pertinent to this matter.  (Dkt. Nos. 36, 38.)  Hammer also filed a request to take judicial notice of "adjudicative facts" pursuant to Rule 201 of the Federal Rules of Evidence.  (Dkt. No. 37.)  Hammer filed various letters that he asks to be part of the record.  (Dkt. Nos. 39, 40.)  And finally, on August 28, 2023, Hammer filed an argument to overcome the procedural bar asserted by respondent against one of his claims.  (Dkt. No. 41.)

The court will consider Hammer's substantive responses to the respondent's motion to dismiss (Dkt. Nos. 19, 21, 27, 28), including the untimely response (Dkt. No. 41).  As for the

balance of Hammer's submissions, the court notes that it has not expanded the record, *see* Rule 7, Rules Governing Section 2254 Cases, or granted leave to conduct discovery.  Nonetheless, the court has examined all of Hammer's filings, and they do not impact the court's resolution of this matter.

## II.  ANALYSIS

### A.  Standard of Review

Pursuant to § 2254(d), "a petitioner is entitled to relief only the state court adjudication of their claim was [1] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court'; or [2] 'based on an unreasonable determination of the facts in light of the evidence presented.'"  *Allen v. Stephan*, 42 F.4th 223, 246 (4th Cir. 2022) (quoting 28 U.S.C. § 2254(d)).  "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review to factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge."  *Davis v. Ayala*, 576 U.S. 257, 276 (2015).

"Clearly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) when it 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Allen*, 42 F.4th at 246 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).  A state court's decision is an "unreasonable application" of clearly established federal law if the state court correctly identified the governing legal principle but "'unreasonably applie[d] that principle to the facts of the prisoner's case.'"  *Id.* (quoting

*Williams*, 529 U.S. at 413).  This standard is meant to be "difficult to meet."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "'The ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice.'"  *Allen*, 42 F.4th at 246 (quoting *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017)).  The petitioner "must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

A state court's factual determinations, meanwhile, "are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence."  *Allen*, 42 F.4th at 246 (citing 28 U.S.C. § 2254(e)(1)).  A state court's decision is based on an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2) when it is "'sufficiently against the weight of the evidence that it is objectively unreasonable.'"  *Id.* (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."  *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is "especially so" when the state court "resolved issues like witness credibility."  *Id.* (quoting *Cagle v. Branker*, 520 F.3d 320, 324–25 (4th Cir. 2008)).  Credibility judgments may be overturned only when the error is "stark and clear."  *Id.*

Even if a petitioner meets his burden under § 2254(d) and establishes the state court erred, "habeas relief will not be granted unless the error had substantial and injurious effect or

influence in determining the jury's verdict" or there is at least "grave doubt as to the

harmlessness" of the error.  *Allen*, 42 F.4th at 246–47 (quoting *Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993) and *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002) (internal quotation

marks omitted)).

       In determining whether the state court's decision is contrary to, or an unreasonable

application of, clearly established federal law, the court looks to the last reasoned state court

opinion.  *See Lewis v. Clarke*, CASE NO. 7:20CV00421, 2021 WL 1541034, at *5 (W.D. Va.

Apr. 20, 2021) ("On habeas review, a federal court is to 'look through' the summary decision to

the last court decision providing a rationale for the merits decision and to presume that the state

high court adopted the same reasoning.") (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).

In this instance, the relevant opinions are from the Court of Appeals of Virginia.  *See Hammer v.

Commonwealth*, 867 S.E.2d 505 (Va. Ct. App. 2022); Resp't's Ex. G (Va. Ct. App. Apr. 30,

2021).

**B.  Hammer's Pending Motions**

       Hammer moves the court to take judicial notice of a table of speed and stopping distances

set forth in the Code of Virginia.  *See* Va. Code § 46.2-880 ("All courts shall take notice of the

following tables of speed and stopping distances of motor vehicles, which shall not raise a

presumption, in actions in which inquiry thereon is pertinent to the issues . . .").  He contends

that this information is relevant to his argument that Officer Sawyer could not have identified

him.  The court will grant this motion.

       Hammer also moves for discovery pertaining to whether the prosecutor misled jail

officials about his case being related to Venable's case, which resulted in jail officials keeping

them separated.  A § 2254 habeas petitioner "is not entitled to discovery as a matter of ordinary

course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Instead, he must "show good cause

before he is afforded an opportunity for discovery." *Quesinberry v. Taylor*, 162 F.3d 273, 279

(4th Cir. 1998); Rule 6(a), Rules Governing Section 2254 Cases.  A showing of good cause must

include specific allegations suggesting that the petitioner will be able to demonstrate that he is

entitled to habeas corpus relief.  *Bracy*, 520 U.S. at 908–09.  Hammer has failed to make this

showing, and as a result, this motion will be denied.

### C.  Claim One: Prosecutorial Misconduct

Hammer contends that the prosecutor committed misconduct by hindering his ability to

interview Venable.  (Pet. at 5.)  Hammer states that the prosecutor asked the staff at his jail to

keep Hammer and Venable separate.  (Memo. at 10–11.)  At the postconviction hearing, the

prosecutor stated that she was unaware of Hammer's request to interview Venable.  However,

Venable and Hammer were kept separate at the request of Venable's lawyer, who did not want

Venable to commit perjury and because Venable's case was related to Hammer's case.  (J.A.

524–25.)

The Supreme Court has recognized that prosecutorial misconduct may be "of sufficient

significance to result in the denial of the defendant's right to a fair trial." *United States v.*

*Bagley*, 473 U.S. 667, 676 (1985).  "[T]he test for reversible prosecutorial misconduct generally

has two components: that (1) the prosecutor's remarks or conduct must in fact have been

improper, and (2) such remarks or conduct must have prejudicially affected the defendant's

substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910

F.2d 102, 113 (4th Cir. 1990).  To establish prejudicial misconduct on the part of the prosecutor

the alleged misconduct must have "so infected the trial with unfairness as to make the resulting

conviction a denial of due process."  *Darden v. Wainright*, 477 U.S. 168, 180–81 (1986); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010).

As the court of appeals explained, Hammer argued that an unidentified third party informed him that Venable saw "another white male wearing a black leather jacket" walk from the stolen vehicle to Hammer's building "a few hours after the police chase."  (Ex. G at 3.) Hammer asserts that he was not allowed to interview Venable at the jail.  Hammer proffered that Venable would have testified about the white male wearing a black leather coat, but Hammer did not provide an affidavit or Venable's testimony to support this allegation.  (Ex. G at 4.)  In the absence of a proffer showing that "harm was done," the court refused to consider the claim.  (Ex. G at 4–5.)

The court of appeals' ruling that Hammer could not establish prejudice was not contrary to or an unreasonable application of clearly established federal law.  At trial, Officer Mawyer testified that he saw Hammer fleeing in a vehicle with Morgan, his spouse.  *Hammer*, 867 S.E.2d at 509 ("As the vehicle passed him, Mawyer saw Hammer behind the wheel and Morgan in the passenger seat, looking out the window towards him.").  Hammer was not convicted of stealing the SUV; he was convicted of felony eluding, abduction, and driving as a habitual offender, on the testimony of Officer Mawyer, and the contemporaneous statement of Morgan.  Venable's purported testimony about another person leaving the stolen vehicle hours after the police chase would have had little to no effect on the jury's determination that Hammer was the driver of the vehicle that sped past Mawyer.  Further, there was evidence that Venable and Hammer were in communication prior to trial.  (Ex. G at 5 n.3 ("[W]e note that the record supports the trial court's finding that appellant was able to communicate with Venable before trial.  The evidence at trial included a letter written by appellant to Morgan in which he stated that 'Little G' was in

jail, but he would testify that he and appellant were playing cards 'at the apartment that night' and that he would be appellant's 'alibi.'").)  Thus, Hammer cannot establish that the prosecutor's conduct deprived him of a fair trial.

Hammer argues that the court of appeals wrongly faulted him for not proffering Venable's testimony because he was unable to procure it due to prosecutorial misconduct.  (Dkt. No. 1 at 37 of 51.)  The court of appeals cited evidence that Hammer and Venable were in communication prior to trial, but even if Hammer was prevented from making a formal proffer, Hammer was not prejudiced by the absence of Venable's testimony at trial.  Hammer also argues that the prosecutor blocked him from communicating with his wife.  (*Id.* at 27 of 51.)  Unlike Venable, Hammer's wife testified at trial, and moreover, Hammer fails to tie the prosecutor's alleged misconduct with respect to Morgan Hammer to any potential prejudice.

For these reasons, the court will grant respondent's motion to dismiss this claim.

### D.  Claim Two: Sixth Amendment Self-Representation

The right of self-representation is inherent in the Sixth Amendment.  *Faretta v. California*, 422 U.S. 806, 832 (1975).  In accordance with that right, Hammer represented himself at trial.  Hammer argues that his right to present evidence in his favor was violated when the trial court refused his request for a continuance on the morning of trial so he could interview Venable.  (Pet. at 7; Memo. 16–22.)  A trial court does not violate a criminal defendant's Sixth Amendment rights when the defendant is prevented from providing evidence "that is not material (i.e., would not with reasonable probability affect the outcome of trial), or when the evidence is not favorable to the defendant's case."  *United States v. Fulcher*, 188 F. Supp. 2d 627, 634 (W.D. Va. 2002) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982); *United States v. Bennett*, 675 F. 2d 596, 598 (4th Cir. 1982)).

The court of appeals reasoned that Hammer "failed to establish that he was prejudiced by the trial court's denial of his request for a recess because he never adequately proffered Venable's testimony." (Ex. G at 6.)  Therefore, the court of appeals found that the denial of Hammer's request for a recess was not an abuse of discretion.  (*Id.*)  This reasoning is not contrary to or an unreasonable application of clearly established federal law.  For the same reasons stated with respect to Hammer's claim of prosecutorial misconduct, Venable's testimony about whether Hammer stole the vehicle would have little effect on the jury's finding that Hammer was driving the car that sped past Officer Mawyer, based on Mawyer's testimony and Morgan's contemporaneous statement.  This claim also fails because Hammer cannot establish he was prejudiced by the trial court's actions.

Hammer argues that his right to self-representation was violated because he was not allowed to prepare and present his defense in his desired manner.  (Dkt. No. 1 at 34 of 51.)  With respect to Venable, Hammer asserts that the right to self-representation includes the right to prepare for trial, and in turn, the right to interview witnesses.  (Dkt. No. 21 at 25.)  Thus, the trial court violated his Sixth Amendment rights when it refused to grant his request for a continuance to interview Venable by stating "This a preparation issue, if you're not prepared, if you've not interviewed your witnesses." (Dkt. No. 21 at 21.)  Hammer construes his Sixth Amendment rights too broadly.  The "'right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law.'"  *United States v. Ganter*, 3 F.4th 1002, 1006 (8th Cir. 2021) (quoting *Faretta*, 422 U.S. at 834 n.46).  The denial of a motion for continuance does not "unconstitutionally coerce[]" a defendant "into relinquishing his right to represent himself at trial." *Id.*

Accordingly, the court will grant respondent's motion to dismiss this claim.

### E.  Claim Three: Sufficiency of the Evidence

Hammer argues that Officer Mawyer's testimony identifying Hammer as the perpetrator was "inherently incredible," (Pet. at 8), and thus, there was insufficient evidence to support his conviction.  Sufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim.  *Jackson v. Virginia*, 443 U.S. 307, 321–22 (1979). A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id.* at 324. The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  The critical inquiry on review of a sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Id.* at 318.

The court of appeals found that the trial court did not err in refusing to find Mawyer's testimony inherently incredible and declining to set aside the jury verdict.  *Hammer*, 867 S.E.2d at 513.  Hammer argued that Mawyer could not have identified Hammer as the driver because the car was speeding past Mawyer's parked cruiser.  But Mawyer explained that he "positioned his patrol car to get a clear view of a passing vehicle; the road was illuminated by two streetlights; he was personally familiar with Hammer and Morgan; he recognized them as they looked out the window towards him; he made direct eye contact with Hammer; and he saw the distinctive tattoo on Hammer's hand as Hammer held the steering wheel."  *Id.*[2]  What's more,

---

[2]  Hammer argues that pursuant to Virginia Code § 46.2-880 (Table of Speed), Mawyer's identification of him was "beyond human capabilities," (Dkt. No. 21 at 27), because traveling 63 miles per hour means that he was moving at a rate of 92.5 feet per second.  The court has no basis to make this conclusion aside from Hammer's own hyperbolic speculation, and in any event, the table of speed does not undermine the court of appeals' reasoning that Mawyer's identification was credible and supports the jury's verdict.

Mawyer's testimony was corroborated by other evidence, including Morgan's written statement identifying Hammer as the person who abducted her and eluded police, and a photograph of the well-lit location where Mawyer waited to intercept them. *Id.* Mawyer also had a view of Hammer for about ten seconds as he ran into the woods, wearing a black leather jacket, which was found along with Hammer in his apartment later that morning. *Id.* "Also found in the apartment was the key to the car stolen from Fishersville, 'fairly close' to where Hammer had fled on foot just hours before." *Id.* Finally, to the extent that Morgan offered inconsistent testimony at trial, the jury also heard evidence that Morgan feared Hammer, that he threatened her if she testified against him, and that he scripted what he wanted her to say on the witness stand. *Id.* This reasoning is not contrary to, or an unreasonable application of, clearly established federal law because the record evidence "could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318.

The court will therefore grant respondent's motion to dismiss this claim.

**F. Claim Four: *Nolle Prosse* of Abduction Charge**

Hammer argues that the trial court lacked the statutory authority to grant the prosecution's motion to *nolle prosse* the abduction charge and subsequently vacate it. (Pet. 10.) This is a matter of state law that is not reviewable in federal habeas corpus. "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009); *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The court will grant the motion to dismiss this claim.

### G.  Claim Five: Waiver of Right to Counsel

In this claim, Hammer argues that his waiver of the right to counsel was invalid. (Addendum to Pet. at 3–14.)  Hammer contends that although the trial judge forced an attorney on him as standby counsel when he requested co-counsel, his request for co-counsel was not a valid waiver of his Sixth Amendment right to counsel.  (*Id.* at 4.)  He states that his request to proceed *pro se* "rested upon nothing other than his dissatisfaction with counsel Swortzel. Furthermore, Hammer's waiver of counsel was invalid because the trial judge did not advise Hammer of the disadvantages of self-representation making it more difficult to interview witnesses."  (*Id.* at 5.)  Respondent argues that this claim is procedurally defaulted because he is raising it for the first time in this petition.

A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court.  28 U.S.C. § 2254(b).  A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).  Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court.  *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002).  Failure to do so "deprive[s] the state court of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  A petitioner must also present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  A state prisoner does not "fairly present" a claim for

exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288; *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review"). Simultaneous exhaustion and procedural default occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 722). In that case, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288.

This claim is both exhausted and procedurally defaulted because it would be procedurally barred if Hammer attempted to raise it in state court. Hammer has already pursued his direct appeal, and he is limited to one direct appeal process. *See* Va. Code § 19.2-400. Moreover, Hammer could not exhaust this claim in a state habeas corpus action, both because it would be untimely and because this claim would not be cognizable in such an action. In Virginia, a habeas corpus petition must be filed within two years of the final conviction or one year from the date a state appeal became final, whichever is later. Va. Code § 8.01-654(A)(2). Hammer's appeal became final more than a year ago on September 2, 2022, when the Supreme Court of Virginia refused Hammer's appeal. Virginia Code § 8.01-654(A)(2) is an adequate and independent bar

that precludes federal review of a claim.  *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d

584, 588 (E.D. Va. 2006).  Even if Hammer could pursue a timely state habeas corpus petition,

this claim would be procedurally defaulted under Virginia law because it could have been raised

at trial and on direct appeal.  *See Elliot v. Warden of Sussex I State Prison*, 652 S.E.2d 465, 473

(Va. 2007) (finding claims to be procedurally defaulted because the issues "could have been

raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas

corpus") (citing *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)).[3]

Thus, to consider this claim, Hammer must satisfy one of the two recognized exceptions:

"cause and prejudice, or actual innocence."  *United States v. Pettiford*, 612 F.3d 270, 280 (4th

Cir. 2010).  Hammer concedes that he cannot meet the cause and prejudice standards.  (*See* Dkt.

No. 21 at 3.)  Instead, he argues actual innocence as a "gateway" to consider the claim.  (*See id.*)

Actual innocence, recognized as a "fundamental miscarriage of justice," is established when a

petitioner shows, "in light of all the evidence, it is more likely than not that no reasonable juror

would have convicted him."  *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir.

2021) (citing *Bousely v. United States*, 523 U.S. 614, 623 (1998)).  A gateway claim of actual

innocence requires the petitioner to present "new reliable evidence—whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not

presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

As his purported new evidence, Hammer provides a declaration from Venable

recounting, as discussed above, that in the early morning hours of November 27, 2018, he

witnessed a white male wearing a black leather jacket, who was not Hammer, exit a white SUV

and enter his apartment building.  (*See* Declaration of Guy Venable ¶ 3, Dkt. No. 7-1.)  As an

---

[3] Hammer recognizes that this claim is procedurally defaulted because he "did not preserve this claim for appeal in the trial court."  (Dkt. No. 28 at 2.)

initial matter, this is not "new" evidence for purposes of establishing a gateway actual innocence claim. *See Phillips v. Clarke*, Case No. 7:20cv00108, 2021 WL 2482693, at *5 (W.D. Va. June 17, 2021) (remarking that the proposed evidence "is not new evidence, but evidence he knew or should have known at the time of his sentencing"). Even if considered new, for the reasons already stated, this evidence does not create a reasonable probability that a jury would return a different verdict.

For these reasons, the court will grant the respondent's motion to dismiss this claim.

## H. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petition is denied on procedural grounds, which is the case here with respect to one of Hammer's claims, a petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hammer has failed to make the requisite showing. Therefore, the court declines to issue a certificate of appealability. However, Hammer may still ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate. *See* Fed. R. App. P. 22(b).

### III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will issue an appropriate order granting Hammer's motion for judicial notice, denying Hammer's motion to conduct discovery,

granting respondent's motion to dismiss, denying Hammer's § 2254 petition, and declining to issue a certificate of appealability.

Entered: September 19, 2023.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge